**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A.S., | |
| Plaintiff, | CIVIL ACTION NO. 1:26-cv-2160 |
| v. | |
| PPE CASINO RESORTS MARYLAND, LLC D/B/A LIVE! CASINO & HOTEL, THE CORDISH COMPANIES, INC., and ABC CORPS. 1-10, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

COMES NOW Plaintiff Louis Vuitton Malletier S.A.S. ("Louis Vuitton"), by and through its undersigned counsel, and hereby complains and alleges against Defendants PPE Casino Resorts Maryland, LLC d/b/a Live! Casino & Hotel, The Cordish Companies, Inc., and ABC Corps. 1-10 (collectively, "Defendants") as follows:

## STATEMENT OF THE CASE

1. This is an action for willful trademark counterfeiting, trademark infringement, false association, trademark dilution, and violation of Maryland unfair competition common law arising from Defendants' sophisticated and multi-faceted campaigns to use Louis Vuitton's intellectual property and significant goodwill to create the false impression that Louis Vuitton and Defendants are connected, affiliated or related in some way—all for Defendants' own commercial gain.

2. Defendants own, operate, control, and manage at least five well-known casinos and hotels in four different states—including in Maryland, Virginia, Louisiana, and Philadelphia and Pittsburgh, Pennsylvania—and online casino operations collectively known as Live! Casino &

Hotel ("Live Casino"). Defendants' location in Hanover, Maryland is known as Live! Casino & Hotel Maryland ("Live Casino Maryland").

3.      In or around April 2026, Defendants began the first part of a coordinated mass marketing campaign designed to drive business, increase revenue and improve the overall appeal of Defendants' Live Casino, including Live Casino Maryland. Defendants did this by targeting Louis Vuitton and using, without authorization, its famous brand, image, trademarks and goodwill as part of the campaign ("Unauthorized Campaign 1"). Defendants referred to the Unauthorized Campaign 1 as "The Art of Luxury."

4.      Specifically, Defendants intentionally manufactured, advertised, promoted, offered, and distributed a "luxury bag collection" featuring copies of Louis Vuitton's iconic Monogram Design trademark, including its three famous Flower Design trademarks (the "Infringing Monogram Design"). In a particularly brazen move, Defendants replaced the famous overlapping "LV" logo with the word "Live!" to purposefully infringe the iconic Louis Vuitton Monogram Design and to effectively link Louis Vuitton with Defendants' Live Casino. This was done with one specific and intentional purpose—to falsely convey to the consuming public that Louis Vuitton and Defendants' Live Casino are affiliated. The Infringing Monogram Design and Louis Vuitton's Monogram Design appear below:

| Infringing Monogram Design | Louis Vuitton Monogram Design |
|---|---|
| | |

2

5.    Moreover, Defendants' "luxury bag collection" bearing the Infringing Monogram Design consisted of a handbag, toiletry case, backpack, and tote bag and featured color combinations, product shapes, and design aesthetics intended to mimic authentic Louis Vuitton products (the "Infringing Products").  Photographs of the Infringing Products and the authentic Louis Vuitton handbag, toiletry case, backpack, and tote bag they were intended to mimic appear below:

| The Infringing Products |
| --- |



| Louis Vuitton Authentic Products |
| --- |

6.    Defendants conceived of, developed, and launched Unauthorized Campaign 1 as part of a willful and multi-step initiative to lure patrons to their casinos to gamble, dine, and shop— all for Defendants' commercial gain and profit.  Defendants invited prospective patrons and loyalty members by mail and online advertisements to visit Live Casino over a series of weeks in April

3

2026 where they could receive a "luxury bag collection" of Infringing Products. Patrons of Live Casino could even purchase the Infringing Products by redeeming reward credits after spending thousands of dollars at Live Casino.

7.     Patrons of Live Casino were never informed that the Infringing Products were not genuine Louis Vuitton products, much less that Defendants have no affiliation or any connection to Louis Vuitton.

8.     After Louis Vuitton learned of Defendants' unauthorized and damaging conduct and sent Defendants a cease-and-desist letter in April 2026, Defendants moved to the next phase of their intentional mass marketing campaign to drive revenue by falsely suggesting to the consuming public that there is some connection, sponsorship, or affiliation between Defendants and Louis Vuitton. In May 2026—weeks later—Defendants launched the "Endless Elegance" campaign ("Unauthorized Campaign 2") in which it marketed plans to distribute an array of purportedly authentic Louis Vuitton products, including handbags, jewelry, sunglasses, hats, and fragrances, among other products.

9.     Unauthorized Campaign 2 comes after already conditioning the public to link, connect, and associate Defendants with Louis Vuitton, and after Louis Vuitton objected to Unauthorized Campaign 1 via a cease-and-desist letter.

10.    Defendants have been and are continuing to deliberately use Louis Vuitton, Louis Vuitton's famous trademarks, and Louis Vuitton's substantial goodwill to attract attention, customers, traffic, goodwill, and overall financial and commercial benefit to Defendants, all while intentionally confusing and deceiving the public, and causing persistent and irreparable damage to Louis Vuitton.

11.     Through this conduct, Defendants have (i) engaged in trademark counterfeiting; (ii) engaged in trademark infringement; (iii) deceived the public by creating the false impression that Defendants are connected to, affiliated with, or sponsored by Louis Vuitton; (iv) diluted the distinctive quality of Louis Vuitton's famous marks; and (v) engaged in deceptive, unfair, and unlawful trade practices in violation of Maryland law. Defendants' acts are likely to cause consumer confusion, mistake, and deception, and have caused and will continue to cause significant and irreparable harm to Louis Vuitton and its valuable goodwill absent injunctive relief.

## PARTIES

12.     Louis Vuitton is a *société par actions simplifiée* duly organized and existing under the laws of France with a principal place of business at 2 rue du Pont Neuf, Paris, France. Louis Vuitton, directly, or through its related companies, is engaged, *inter alia*, in the design, manufacture, distribution, and sale in interstate and foreign commerce of prestigious luxury merchandise including, without limitation, handbags, luggage, apparel, shoes, scarves, jewelry, watches, and other fashion accessories bearing one or more of Louis Vuitton's famous trademarks (the "Louis Vuitton Products").

13.     Louis Vuitton is the sole and exclusive distributor in the United States of Louis Vuitton Products.

14.     Upon information and belief, Defendant PPE Casino Resorts Maryland, LLC is incorporated in the State of Maryland with a registered address of 7002 Arundel Mills Circle, No. 7777 Hanover, MD 21076 and a principal place of business located at 7002 Arundel Mills Circle, No. 7777 Hanover, MD 21076.

15.     PPE Casino Resorts Maryland, LLC holds the Video Lottery Operation License from the State of Maryland to operate the Live Casino Maryland.

16. PPE Casino Resorts Maryland, LLC holds itself out to the public as doing business as Live! Casino and Hotel, and owns, operates, controls, and manages all Live Casino locations in Louisiana, Pennsylvania, Virginia, and Maryland.

17. PPE Casino Resorts Maryland, LLC is the party with whom users of the Live Casino mobile application and website for all locations contract when using those services according to the terms of service on the livech.com site.

18. Upon information and belief, Defendant The Cordish Companies, Inc. is incorporated in the State of Maryland with a registered address of 601 E. Pratt Street, Suite 600, Baltimore, MD 21202.

19. Upon information and belief, the Cordish Companies, Inc. "own[s], control[s], and manage[s]" the Live Casino Maryland. *See Behind the deal: David Cordish says $1.81B casinos deal is 'all about growth'*, BALTIMORE BUSINESS JOURNAL (MARYLAND), December 7, 2021; *see* also https://www.cordish.com/About/Capabilities (stating that the Cordish Companies "own and operate" the Live Casino Maryland).

20. Upon information and belief, the Cordish Companies, Inc. owns, operates, controls, and/or manages all Live Casino locations in Louisiana, Pennsylvania, Virginia, and Maryland. *See* https://www.cordish.com/Portfolio.

21. Upon information and belief, Defendants ABC Corps. 1-10 are unknown entities involved in the ownership, operation, management, and control of the Live Casino and its various locations and are involved in the infringing activities herein.

## JURISDICTION AND VENUE

22. The claims herein arise under the provisions of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq. for trademark counterfeiting, trademark infringement, false association, and

dilution of trademarks registered with the United States Patent and Trademark Office ("USPTO"), as well as under the common law of the State of Maryland.

23.     This court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1131, 1332, and 1338. This Court has supplemental jurisdiction over the other claims raised herein pursuant to 28 U.S.C. § 1367.

24.     This Court has personal jurisdiction over PPE Casino Resorts Maryland, LLC d/b/a Live! Casino & Hotel because it: (a) resides in this District and the State of Maryland; (b) conducts business in this District and the State of Maryland and is otherwise purposefully, systematically, and continuously engaged in substantial and not isolated activities in this District and the State of Maryland; (c) holds the Video Lottery Operation License from the State of Maryland to operate the Live Casino Maryland; (d) holds itself out as doing business as Live! Casino & Hotel on behalf of the Live Casino Maryland situated in this District; (e) contractually binds patrons of the Live Casino mobile application and livech.com website, both in and out of this District, to terms and conditions; and (f) the vast majority of the illegal conduct by PPE Casino Resorts Maryland, LLC complained of herein occurred in this District and the State of Maryland, including at Live Casino Maryland.

25.     This Court has personal jurisdiction over The Cordish Companies, Inc. because it: (a) resides in this District and the State of Maryland; (b) regularly conducts business in this District and the State of Maryland and is otherwise purposefully, systematically, and continuously engaged in substantial and not isolated activities in this District and the State of Maryland; and (c) the vast majority of the illegal conduct by The Cordish Companies, Inc. complained of herein occurred in this District and the State of Maryland, including at Live Casino Maryland.

26.     Furthermore, Defendants' liability to Louis Vuitton arises from, and/or is related to Defendants' activities within this District and the State of Maryland.

27.     Personal jurisdiction over Defendants is therefore proper in this judicial district.

28.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.     Louis Vuitton and the Louis Vuitton Trademarks

29.     Since its founding in 1854 in Paris as a luggage and trunks business, Louis Vuitton has grown into one of the world's premier fashion houses, known for its high-quality handbags, luggage, scarves, jewelry, watches, and many other fashion and luxury goods.

30.     To protect and maintain the image of the brand, Louis Vuitton Products are sold exclusively through boutiques owned and operated by Louis Vuitton and its related companies, some of which are located within high-end retail stores such as Neiman Marcus and Saks Fifth Avenue, through the Louis Vuitton website http://us.louisvuitton.com, and through the website of its related company, Le Bon Marche, at http://www.24s.com.

31.     Louis Vuitton is the owner of numerous world-famous and iconic trademarks, including, but not limited to, the Louis Vuitton Monogram Design trademark, consisting of a repeating pattern featuring the LV Logo design mark and three Stylized Flower design marks (the "Monogram Design Trademark"), the Louis Vuitton Décor Florale trademark, consisting of a repeating pattern of the three Stylized Flower design marks without the LV Logo Design mark (the "Décor Florale Design Trademark"), and each of the three Stylized Flower design marks (collectively, the "Stylized Flower Trademarks") (the Monogram Design Trademark, Décor Florale Design Trademark, and Stylized Flower Design Trademarks collectively, the "Louis

Vuitton Trademarks"), which are federally registered for use in conjunction with a variety of goods including, *inter alia*, handbags and accessories.

32.     Examples of the Louis Vuitton Trademarks, which are each registered with the USPTO, are listed in the table below, and true and correct copies of the U.S. registration certificates for the Louis Vuitton Trademarks are attached as Exhibit A:

| *The Monogram Design Trademark* | | | |
|---|---|---|---|
| Mark | Reg. No. | Reg. Date | Goods |
| | 297,594 | 09/20/1932 | Class 18: Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, handbags, and pocketbooks |
| | 4,192,541 | 08/21/2012 | Class 18:  Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; trunks; suitcases; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases. |
| *The Décor Florale Design Trademark* | | | |
| | 3,107,072 | 06/20/2006 | Class 18:  Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, business card cases, credit card cases; umbrellas. |

| *The Stylized Flower Design Trademarks* | | | |
|---|---|---|---|
| | 2,181,753 | 08/18/1998 | Class 18:  Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attache cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas. |
| | 2,177,828 | 08/04/1998 | Class 18: Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather, trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas |
| | 2,773,107 | 10/14/2003 | Class 18:  Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attache-cases, briefcases, drawstring pouches, pocket wallets, purses, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather.| |

33.     The above-referenced trademark registrations are owned by Louis Vuitton, are valid, subsisting, and in full force and effect, and are registered on the Principal Register of the USPTO.  The registrations were issued long before Defendants' conduct complained of herein and have become incontestable pursuant to 15 U.S.C. § 1065.

10

34.    Louis Vuitton has invested millions of dollars and over a century of time and effort to create consumer recognition in the Louis Vuitton Trademarks and to ensure that the public, not only in the United States but throughout the world, associates the Louis Vuitton Trademarks with high-quality luxury goods emanating exclusively from Louis Vuitton.

35.    As a result of Louis Vuitton's efforts, millions of consumers have been exposed to the Louis Vuitton Trademarks through advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, in songs, on the Internet and social media, and in other forms of unsolicited media coverage.

36.    Louis Vuitton has developed a worldwide reputation for high-quality luxury goods, and the public has come to exclusively and immediately identify products bearing the Louis Vuitton Trademarks, and the goodwill associated therewith, with Louis Vuitton.

**B.      Defendants' Unlawful Conduct**

37.    Defendants own and operate casino and hotel operations in Louisiana, Pennsylvania, Virginia, and the Live Casino Maryland located in Hanover, Maryland, and are responsible for the planning, development, approval, and execution of marketing, and promotional campaigns offered to its customers. Defendants also own and operate online casino operations.

38.    In or about April 2026, Defendants designed and implemented a multi-faceted mass marketing promotional campaign offering "a luxury bag collection" to casino patrons and prospective customers. As part of the initial campaign, Unauthorized Campaign 1, Defendants advertised, distributed, intended to distribute, and sold on a weekly basis four products—a handbag, a toiletry bag, a backpack, and a tote bag—each bearing designs that closely replicate Louis Vuitton's iconic Monogram Design Trademark and exactly copy the Décor Florale Design Trademark and each of Louis Vuitton's Stylized Flower Design Trademarks.  Defendants kept the entirety of the famous Louis Vuitton Monogram Design intact with one exception; they replaced

11

the interlocking LV Logo Design with the word "Live!." Defendants' Infringing Monogram

Design and Louis Vuitton's Monogram Design appear below:

| Infringing Monogram Design | Louis Vuitton Monogram Design |
|---|---|
|  | |

39.     Representative images of the Infringing Products advertised and distributed by Live

Casino as part of Unauthorized Campaign 1 appear below:

| Representative images of The Infringing Products |
|---|
|  |

12



40.     Unauthorized Campaign 1 was never approved, licensed, or consented to by Louis Vuitton.

41.     To promote Unauthorized Campaign 1, Defendants circulated marketing materials, including a promotional brochure (shown below) that was distributed to casino patrons and subscribers and members of Live Casino's marketing and loyalty programs.   This brochure prominently featured the phrases "The Art of Luxury" and "Receive your complimentary luxury bag collection!" and invited recipients to visit at least Live Casino Maryland, and likely its other casino and hotel operations locations, on specified dates in April 2026 to obtain the Infringing Products.



42.     Upon information and belief, a significant number of physical brochures were printed and distributed.

43.     None of the Unauthorized Campaign 1 promotional materials disclosed that the Infringing Products were not genuine Louis Vuitton Products, or that the Defendants were not connected to, sponsored by or affiliated in any way with Louis Vuitton.

44.     Unauthorized Campaign 1 was mass marketed with multiple distribution dates and touch points throughout April 2026, including April 7, 2026, when toiletry cases bearing the Infringing Monogram Design were distributed; April 14, 2026, when backpacks bearing the Infringing Monogram Design were distributed; and additional scheduled dates of April 21, 2026 and April 28, 2026, on which a handbag and a tote bag and pochette, all bearing the Infringing Monogram Design, were to be distributed, respectively.

45.     The Unauthorized Campaign 1 promotions were designed to encourage Live Casino's customers to return over successive weeks to obtain the Infringing Products from the advertised "luxury bag collection."  This was not a single event, but rather a textbook example of frequency marketing, designed to emphasize repeated customer exposure and to deepen the false association between Defendants and Louis Vuitton.

46.     Unauthorized Campaign 1 was presented as a cohesive, multi-part promotion tied to Defendants' broader mass marketing efforts to increase business and revenues using the false perception of some connection or relationship to Louis Vuitton.

47.     On the first two scheduled promotional dates, Defendants distributed Infringing Products directly to patrons at least at the Live Casino Maryland location.

48.     Upon information and belief, numerous customers attended the April 7, 2026 and April 14, 2026 promotional events and received the Infringing Products.

49.     Upon information and belief, substantial quantities of the Infringing Products were distributed to the public at Live Casino Maryland, but also at the Defendants' locations in Louisiana, Pennsylvania, and Virginia.

50.     Defendants also advertised Unauthorized Campaign 1 online to members of the public to induce prospective patrons and members to visit Live Casino to purchase "your luxury bag collection!" by redeeming "750 tier credits."  The Infringing Products are prominently displayed, and customers are encouraged to use the Infringing Products to "store all their jackpot money."

51.     Upon information and belief, Live Casino's "tier credit" program is a rewards program that provides patrons with rewards credits every time they play, shop, and dine at Live Casino. For example, Defendants' brochures advertise that patrons can earn the following rewards

credits for spending money at Live Casino: "Slots: $1 Coin-In = 1 Tier Credit | Video Poker: $2 Coin-In = 1 Tier Credit | ETG: $6 Coin-In = 1 Tier Credit | Tables Games: Based on Play | Retail: $1 Cash Spend = 20 Tier Credits." *See* Exhibit B. Reward credits could be redeemed for products such as the Infringing Products shown in the April 12, 2026 post on X.com below.[1] The promotional materials did not disclose that the Infringing Products were not genuine Louis Vuitton Products, or that Defendants are not connected to, affiliated with, or sponsored in any way by Louis Vuitton.



---

[1] Upon information and belief, Defendants also advertised the ability to purchase Infringing Products by redeeming rewards credits on their website but deleted the webpage. *See* Exhibit C, https://www.livech.com/ko/maryland/promotions/luxury-bag-collection.

52.     On April 15, 2026, Louis Vuitton notified Defendants in writing of the above-described activities and objected to Defendants' use of Louis Vuitton's intellectual property and goodwill as part of Unauthorized Campaign 1.  The letter specifically identified the Infringing Products, Louis Vuitton's trademark rights, and the damage being caused to Louis Vuitton as a result of Defendants' activities.  Defendants did not immediately cease their activities upon receiving Louis Vuitton's correspondence.

53.     On or about April 17, 2026, Defendants indicated by email that they would stop distributing the Infringing Products.  Louis Vuitton demanded information related to Unauthorized Campaign 1, including a complete accounting for the Infringing Products.  Defendants have failed to provide the requested information.  Defendants also failed to inform Louis Vuitton of its next planned marketing campaign.

54.     Defendants did not stop their misleading campaign to falsely suggest to the consuming public that there is some connection, sponsorship, or affiliation between Defendants and Louis Vuitton.  Instead, Defendants' very next promotional campaign—offered weeks later in May 2026—involved a pivot by Defendants to distribute purportedly authentic Louis Vuitton Products ("Unauthorized Campaign 2") at all Live Casino locations, including Live Casino Maryland. Defendants' Unauthorized Campaign 2 features an array of purportedly authentic Louis Vuitton Products including handbags, a backpack, a duffle bag, jewelry, sunglasses, a hat, a belt, wallets, and fragrances under the headline such as "ENDLESS ELEGANCE" in large font.

55.     Further, Unauthorized Campaign 2, which was prominently featured on the Live Casino website and on the front of a promotional mailing to Live Casino Maryland patrons, invites customers to "Earn for your chance to win your share of $40,000, including a luxury French Collection…" According to the promotional materials for Unauthorized Campaign 2, a collection

of Louis Vuitton Products for men was scheduled for a drawing on May 29, 2026 and a collection of Louis Vuitton Products for women was scheduled for a drawing on May 30, 2026 at least at the Live Casino Maryland.  Unauthorized Campaign 2 further indicates that Chairman Club, Jade Card, Black Card, Platinum Card, and Gold Card Members all received between 100 and 500 bonus entries.

56.    Upon information and belief, Defendants conducted the May 29, 2026 and May 30, 2026 drawings at Live Casino Maryland and distributed purportedly authentic Louis Vuitton Products while falsely suggesting to the consuming public that there is some connection, sponsorship, or affiliation between Defendants and Louis Vuitton.

57.    Images of  Unauthorized Campaign 2 are featured below:





58.     Unauthorized Campaign 2 has further been featured on the Live Casino Maryland

website at the following URL: https://www.livech.com/maryland/promotions/endless-elegance, a

copy of which is attached as Exhibit D.

59.     Defendants' Unauthorized Campaign 2 is a blatant continuation of the same false

association that began as part of Unauthorized Campaign 1.  Defendants' conduct is likely to

19

continue to confuse consumers because of Defendants' prior unauthorized and damaging actions carried out as part of Unauthorized Campaign 1.

60.    Unauthorized Campaign 1 conditioned the public to view Defendants as connected to Louis Vuitton.  Defendants' use of both Infringing Products and purportedly genuine Louis Vuitton Products are further likely to cause consumers to believe, mistakenly, that Louis Vuitton has sponsored, approved, authorized, partnered with, or is otherwise associated with Defendants or their casino and hotel operations.

61.    Defendants' actions are plainly willful.  Defendants, as part of Unauthorized Campaign 1, intentionally copied certain of Louis Vuitton's most famous, iconic, and valuable trademarks directly and attempted to portray a false collaboration to trade on the significant goodwill associated with Louis Vuitton and the Louis Vuitton Trademarks for their own commercial gain.  Defendants then engaged in a mass marketing campaign designed to reach as many patrons and potential customers as possible and to draw people into their locations on multiple dates due to this false and damaging association.

62.    Once Louis Vuitton demanded that this activity stop, Defendants launched Unauthorized Campaign 2 in an effort to maintain the false pretense of a collaboration with Louis Vuitton.  These actions are willful under the law.

63.    Defendants are not affiliated with, connected to, or sponsored in any way by Louis Vuitton.

64.    Louis Vuitton has never licensed, authorized, or otherwise granted Defendants permission to use any of the Louis Vuitton Trademarks.  Louis Vuitton has never authorized Defendants to suggest or imply, directly or indirectly, any partnership, sponsorship, connection, or affiliation between Defendants and Louis Vuitton.

20

65.     Defendants' willful conduct has caused, and will continue to cause damage to Louis Vuitton, the Louis Vuitton Trademarks, and the goodwill embodied therein.  Defendants' actions have caused and will continue to cause irreparable harm to Louis Vuitton's reputation, goodwill, and ability to control its brand and image unless enjoined.

## CLAIM 1: TRADEMARK COUNTERFEITING

66.     Louis Vuitton hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

67.     The actions of Defendants as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     Defendants have used spurious designations that are identical with, or substantially indistinguishable, from the Louis Vuitton Trademarks.  Defendants have used these spurious designations in connection with the advertising, sale, offering for sale, or distribution of goods for their own personal financial gain.  Defendants' egregious conduct makes this an exceptional case.

69.     Louis Vuitton has not authorized Defendants' use of the Louis Vuitton Trademarks to advertise, offer for sale, sell, or distribute any products, including the Infringing Products.

70.     By their unauthorized use of the Louis Vuitton Trademarks on and in connection with the advertisement, offer for sale, sale, or distribution of products, including the Infringing Products, Defendants have used the Louis Vuitton Trademarks in commerce.

71.     Defendants' unauthorized use of the Louis Vuitton Trademarks in connection with the advertising, promotion, offer for sale, sale, or distribution of the Infringing Products is likely to cause, and in fact has caused, confusion, mistake, and deception among consumers.

72.     Defendants' actions are further likely to cause the public to believe that Defendants' Infringing Products are authorized, sponsored, or approved by Louis Vuitton or that Defendants are affiliated, connected, associated, or in some way related to Louis Vuitton.

73.     Defendants' actions are further likely to result in Defendants unfairly benefiting from Louis Vuitton's goodwill and reputation, to the substantial and irreparable injury of the public, Louis Vuitton, its respective trademarks, and the substantial goodwill represented thereby.

74.     Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

## CLAIM 2: TRADEMARK INFRINGEMENT

75.     Louis Vuitton hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.  Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant.

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive....

76.     The Louis Vuitton Trademarks are federally registered. These marks are inherently distinctive and are associated in the mind of the public with Louis Vuitton.

77.     Defendants have used the Louis Vuitton Trademarks without Louis Vuitton's consent or authorization.  Defendants' use, including the sale and/or distribution of the Infringing Products containing the Infringing Monogram Design in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that the Infringing Products emanate or originate from Louis Vuitton, or that Louis Vuitton has approved, sponsored, or otherwise associated itself with the Defendants or the Infringing Products bearing the Louis Vuitton Trademarks.

22

78.     Defendants' unauthorized use of the Louis Vuitton Trademarks, including the sale and/or distribution of the Infringing Products containing the Infringing Monogram Design, as set forth above has resulted in Defendants unfairly benefiting from Louis Vuitton's advertising and promotion of the Louis Vuitton Trademarks.  This has resulted in substantial and irreparable injury to the public, Louis Vuitton, the Louis Vuitton Trademarks, and the substantial goodwill represented thereby.

79.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80.     Defendants' acts have caused, and will continue to cause, irreparable injury to Louis Vuitton.  Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

## CLAIM 3: FALSE ASSOCIATION

81.     Louis Vuitton hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.     Defendants' unauthorized use of the Louis Vuitton Trademarks on the Infringing Products and in related promotional and advertising materials in connection with Defendants' own goods, services, advertising, marketing, and commercial activities constitutes use in commerce and a false association and false designation of origin.

83.     Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Louis Vuitton and as to the origin, sponsorship, association, or approval of Defendants' services by Louis Vuitton. By making unauthorized use, in interstate commerce, of the Louis Vuitton Trademarks, Defendants have created a false association or used a "false designation of origin" that is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendants with Louis Vuitton and as to the origin, sponsorship,

association, or approval of Defendants' services by Louis Vuitton, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Louis Vuitton, and also give the false impression that Defendants are connected to, sponsored by, or otherwise affiliated in some way with Louis Vuitton in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

85.     Defendants' wrongful acts will continue unless enjoined by this Court.

86.     Defendants' acts have caused, and will continue to cause, irreparable injury to Louis Vuitton.  Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT 4: TRADEMARK DILUTION

87.     Louis Vuitton hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

88.     The Louis Vuitton Trademarks are among the most famous and distinctive trademarks in the world.  Through over a century of continuous, exclusive, and widespread use, extensive advertising and promotion, and substantial sales of high-quality luxury goods, the Louis Vuitton Trademarks have become widely recognized by the general consuming public in the United States as designating a single source—Louis Vuitton.  The Louis Vuitton Trademarks have become associated with luxury, prestige, and exceptional quality.

89.     Long prior to Defendants' unlawful conduct described herein, the Louis Vuitton Trademarks had become famous within the meaning of 15 U.S.C. § 1125(c).  Defendants' actions occurred well after the marks achieved such widespread recognition.

90.     As alleged above, Defendants used in commerce, reproductions, counterfeits, and colorable imitations of the Louis Vuitton Trademarks in connection with the advertising, promotion, offering, and distribution of goods at Live Casino.  Defendants incorporated imitations of the Louis Vuitton Monogram Trademark, Décor Floral Design Trademark, and Stylized Flower Design Trademarks into products that were distributed as part of a coordinated "luxury bag collection" promotional campaign.  In doing so, Defendants used its Infringing Monogram Design in their own commercial services and marketing efforts.

91.     Defendants' use of these imitations of the Louis Vuitton Trademarks is likely to cause dilution of the distinctive quality of the marks by blurring.  Specifically, Defendants' use creates an improper association between the Louis Vuitton Trademarks and Defendants' casino services and promotional activities, thereby impairing the distinctiveness of the Louis Vuitton Trademarks as unique identifiers of Louis Vuitton Products.  By distributing the Infringing Products in a mass-market promotional context, Defendants reduce the ability of the Louis Vuitton Trademarks to serve as a singular and exclusive designation of source.

92.     Defendants' conduct is also likely to cause dilution by tarnishment.  By associating imitations of the Louis Vuitton Trademarks with Infringing Products distributed as promotional giveaways in a casino setting, Defendants harm the reputation and prestige of the Louis Vuitton brand.  The unauthorized use of inferior or uncontrolled goods in connection with the Louis Vuitton Trademarks diminishes the luxury image cultivated by Louis Vuitton and risks creating negative associations in the minds of consumers.

93.     Defendants' acts were undertaken intentionally and with knowledge of the fame and value of the Louis Vuitton Trademarks.  Upon information and belief, Defendants deliberately

25

selected designs that mimic the famous Louis Vuitton Trademarks in order to capitalize on their recognition and consumer appeal.

94. Defendants' actions have caused, and unless restrained will continue to cause, irreparable injury to Louis Vuitton. Louis Vuitton has no adequate remedy at law to compensate for the ongoing harm to the distinctiveness and reputation of the Louis Vuitton Trademarks.

95. Defendants' acts constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

## CLAIM 5: VIOLATION OF MARYLAND COMMON LAW UNFAIR COMPETITION

96. Louis Vuitton hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

97. Defendants palmed off their goods as those of Louis Vuitton, and falsely created the impression that Defendants are connected to, sponsored by, or affiliated in some way with Louis Vuitton, thus improperly trading upon the Louis Vuitton's goodwill and valuable rights in and to the Louis Vuitton Trademarks.

98. Upon information and belief, Defendants committed the above alleged acts willfully, and in conscious disregard of Louis Vuitton's rights, and Louis Vuitton is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Maryland in an amount sufficient to punish, deter, and make an example of Defendants.

99. By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the State of Maryland.

100. Defendants' acts have caused, and will continue to cause, irreparable injury to Louis Vuitton. Louis Vuitton has no adequate remedy at law and is thus damaged in an amount not yet determined.

**PRAYER FOR RELIEF**

**WHEREFORE**, Louis Vuitton demands Judgment against Defendants follows:

A.      A finding that Defendants have infringed the Louis Vuitton Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, as alleged in Claim 1;

B.      A finding that Defendants have infringed the Louis Vuitton Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, as alleged in Claim 2;

C.      A finding that Defendants have falsely associated itself and its goods with Louis Vuitton in violation of 15 U.S.C. § 1125(a), as alleged in Claim 3.

D.      A finding that Defendants have diluted the Louis Vuitton Trademarks in violation of 15 U.S.C. § 1125(c), as alleged in Claim 4;

E.      A finding that Defendants have engaged in unfair competition under Maryland common law, as alleged in Claim 5;

F.      Preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116, Maryland common law, and the Court's equitable powers, enjoining Defendants and its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with them from, directly or indirectly:

a.  counterfeiting, infringing, diluting, or otherwise violating any of the Louis Vuitton Trademarks;

b.  using any reproduction, counterfeit, copy, or colorable imitation of the Louis Vuitton Trademarks in connection with the advertising, promotion, offering, distribution, or provision of any goods or services;

c.  falsely representing, expressly or by implication, any affiliation, connection, sponsorship, or association with Louis Vuitton;

27

> d. engaging in any deceptive, misleading, or unfair trade practices in connection with the promotion or distribution of goods or services; and
>
> e. otherwise unfairly competing with Louis Vuitton in any manner;

G. An order requiring Defendants to deliver up for destruction the Infringing Products, promotional materials, advertisements, packaging, labels, brochures, displays, and any other materials bearing or incorporating the Louis Vuitton Trademarks or any reproduction, counterfeit, or colorable imitation thereof, including without limitation the Infringing Monogram Design;

H. An order requiring Defendants to engage in an appropriate and fulsome corrective advertising campaign to inform all impacted and potentially impacted members of the consuming public that the Infringing Products are not authentic Louis Vuitton products, that Defendants are not, and have never been, associated with Louis Vuitton, and that Defendants had no right to engage in either the Unauthorized Campaign 1 or Unauthorized Campaign 2 and that by doing so, they caused substantial and irreparable harm to Louis Vuitton.

I. An award of Defendants' profits, Louis Vuitton's actual damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a) and Maryland common law;

J. Alternatively, at Plaintiff's election, statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 per counterfeit mark per type of goods;

K. Treble damages and/or enhanced damages to the maximum extent permitted by law, including pursuant to 15 U.S.C. § 1117(b) and (c), based on Defendants' willful conduct;

L. An award of pre-judgment and post-judgment interest as permitted by law;

M. An award of attorneys' fees, investigative fees, and costs pursuant to 15 U.S.C. § 1117(a) and any other applicable authority, including under Maryland law; and

N. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Trial by jury is hereby demanded as to all issues so triable.

Dated:  June 1, 2026

Respectfully submitted,

*/s/ Joseph F. Ecker*
Michael J. Allan (*pro hac vice forthcoming*)
Joseph F. Ecker (#31299)
Cannon Jurrens (*pro hac vice forthcoming*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, D.C.  20036
mallan@steptoe.com
jecker@steptoe.com
cjurrens@steptoe.com
(202) 429-3000