**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| **LOUIS VUITTON MALLETIER, S.A.S.,** *Plaintiff*, <br><br> v. <br><br> **PPE CASINO RESORTS MARYLAND, LLC,** *et al.*, <br><br> *Defendants*. | Civil No. 26-2160-JKB <br><br> **JURY TRIAL DEMANDED** |

## THIRD-PARTY COMPLAINT

Defendant/Third-Party Plaintiff, PPE Casino Resorts Maryland, LLC ("PPE") and Defendant/Third-Party Plaintiff The Cordish Companies, Inc. ("Cordish"), by their undersigned counsel, hereby file this Third-Party Complaint against Third-Party Defendant Power Promotions, LLC ("Power Promotions") pursuant to Federal Rule of Civil Procedure 14, and state as follows:

## PARTIES AND JURISDICTION

1.      Defendant/Third-Party Plaintiff PPE Casino Resorts Maryland, LLC is a Maryland limited liability company with a principal place of business located at 7002 Arundel Mills Circle, No. 7777, Hanover, Maryland 21076.

2.      Defendant/Third-Party Plaintiff The Cordish Companies, Inc., is a privately held Maryland corporation with its principal place of business located at 601 East Pratt Street, Suite 600, Baltimore, Maryland, 21202.

3.      Third-Party Defendant Power Promotions, LLC is a Nevada limited liability company with its principal place of business in Nevada. Upon information and belief, no member of Power Promotions is a resident of the State of Maryland.

1

4. The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332. All members of Third-Party Plaintiffs PPE and Cordish and Third-Party Defendant Power Promotions are citizens of different states or countries and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367 because PPE's and Cordish's claims against Power Promotions are so related to the actions in the first-party Complaint before the Court that they form part of the same case or controversy.

5. Venue is appropriate in this Court because venue is proper in the first-party action under 28 U.S.C. § 1391(b).

## BACKGROUND

### I. POWERS PROMOTIONS CASINO MODEL

6. Power Promotions is a promotional company based out of Las Vegas, Nevada that provides custom products for businesses to distribute as part of promotional campaigns with their customers.

7. Given its location in Las Vegas, Power Promotions focuses much of its business on the casino industry and has grown into one of the largest suppliers of casino gifts and incentives.

8. Although many casinos buy promotional items and materials from different suppliers, Power Promotions has carved out a niche as one of the go-to promotional designers in the industry that can perform custom work with a reputation for providing strong packaging and styling.

9. Power Promotions has historically been a reliable vendor for PPE, and PPE and Power Promotions have a longstanding business relationship.

4915-9930-7714, v. 1

10.    As part of that relationship, Power Promotions provides an inventory catalogue to the marketing personnel of PPE to make monthly purchase orders of custom-designed goods to use as promotional giveaways for PPE customers.

11.    At all times relevant to this matter, and with respect to each purchase order, PPE and Power Promotions understood that Power Promotions was tasked with vetting and clearing that all of its products and designs are compliant with any and all relevant laws and regulations.

12.    At all times relevant to this matter, within the industry, it is understood that by offering products for purchase a promotional goods vendor such as Power Promotions also conveys to the purchaser that they are authorized to resell any name brand production.

13.    At all times relevant to this matter, within the industry, it is understood that by offering products for purchase a promotional goods vendor such as Power Promotions confirms that the purchaser can use a particular trade brand and image as they appear on those products.

## II.    THE LUX MONOGRAM BAG PURCHASE

14.    On or about November 25, 2025, Power Promotions contacted marketing personnel for PPE by email to discuss upcoming promotional purchases for the first quarter of 2026.

15.    To apply a bulk discount for the upcoming purchases, Power Promotions encouraged PPE's marketing personnel to set additional orders for April and May of 2026 and provided a gift catalogue containing a list of goods eligible for purchase. A true and correct copy of the gift catalogue is attached hereto as **Exhibit 1**.

16.    On or about December 4, 2025, Power Promotions sent a quote to marketing personnel for PPE for a purchase order of "Lux Monogram" bags to be fulfilled by April of 2026.

17.    In subsequent email correspondence, Power Promotions and PPE's marketing personnel confirmed the details of the order and the dates of shipment.

4915-9930-7714, v. 1

18.     PPE paid Power Promotions $167,162.00 for the Lux Monogram bags.

19.     At all relevant times, PPE understood that the design of the Lux Monogram bags purchased from Power Promotions had been reviewed, vetted, and cleared by Power Promotions for compliance with any and all laws and regulations.

20.     At all relevant times, PPE accepted the shipment of the Lux Monogram bags on the understanding that the bags were properly designed and, if applicable, licensed or cleared in such a way to avoid any violation of the intellectual property rights of any third party.

21.     In April 2026, PPE conducted a marketing campaign called "The Art of Luxury."

22.     As part of this campaign, PPE advertised the promotional giveaway of the Lux Monogram bags PPE purchased from Power Promotions.

23.     Some, but not all, Lux Monogram bags were given away by PPE to PPE customers in April 2026 as part of this promotion.

24.     Cordish had no involvement in the purchase, the promotional campaign, or the giveaway of the Lux Monogram bags.

### III.    THIS ACTION AND POWER PROMOTIONS' REFUSAL TO DEFEND AND INDEMNIFY PPE AND CORDISH

25.     On April 15, 2026, PPE and Cordish received a cease-and-desist letter from legal counsel for Plaintiff Louis Vuitton Malletier S.A.S. ("Louis Vuitton") informing them for the first time that the Lux Monogram bags purchased from Power Promotions allegedly violated the intellectual property rights of Louis Vuitton and were otherwise not licensed or authorized by Louis Vuitton.

26.     After discussions with PPE were unsuccessful in resolving the dispute, Louis Vuitton instituted the above-captioned lawsuit against PPE and Cordish, asserting claims for

4

4915-9930-7714, v. 1

trademark counterfeiting, trademark infringement, false association, trademark dilution, and common law unfair competition.

27.     On June 10, 2026, counsel for PPE and Cordish contacted Power Promotions to convey that Power Promotions, as the seller of the Lux Monogram bags, must cooperate in the defense against the Louis Vuitton trademark claims.

28.     The June 10, 2026 correspondence further stated that PPE understood that it was Power Promotions' responsibility to have "vetted the design to ensure it didn't violate any third-party intellectual property rights." Power Promotions did not object to that understanding.

29.     In further discussions, the principal of Power Promotions, Mr. Dean Katris, indicated that he had not retained counsel to vet and clear the design of the Lux Monogram bags to ensure compliance with any third-party intellectual property rights.

30.     Instead, Mr. Katris represented that he outsourced the compliance review of the design to the overseas manufacturer of the Lux Monogram bags.

31.     On July 17, 2026, counsel for PPE and Cordish held a conference with counsel for Power Promotions and requested that Power Promotions defend and indemnify PPE and Cordish in the above-captioned action filed by Louis Vuitton.

## <u>COUNT I - INDEMNIFICATION</u>
(PPE v. Power Promotions)

32.     PPE incorporates all of the above allegations as if set forth herein.

33.     Power Promotions has an obligation to indemnify PPE against Louis Vuitton's trademark infringement and related claims.

34.     As to the conduct described in Louis Vuitton's Complaint, any alleged harm or damages to Louis Vuitton (if any) were caused by the acts, omissions, and/or work of Power Promotions, and not PPE.

4915-9930-7714, v. 1

35.    Power Promotions is solely liable to Louis Vuitton for any such alleged harm or damages.

36.    PPE did not participate in the design and/or compliance review of the Lux Monogram bags purchased from Power Promotions.

37.    Instead, PPE merely provided the Lux Monogram bags as giveaway promotions to its customers on the understanding that Power Promotions had vetted and cleared the design of the Lux Monogram bags for compliance with all laws and regulations.

38.    If PPE is found to be liable to Louis Vuitton for the damages allegedly sustained by Louis Vuitton, then PPE's liability is necessarily secondary to Power Promotions because Power Promotions maintained the responsibility to review the design of the Lux Monogram bags and ensure compliance with any third-party intellectual property rights.

39.    Therefore, if liability is found on the part of PPE based on the conduct described in Louis Vuitton's Complaint, which liability and/or fault is specifically denied by PPE, then PPE's liability is only passive, and its liability is premised only on improper acts of Power Promotions.

40.    Therefore, PPE demands indemnification from Power Promotions for any sums adjudged due to Plaintiff Louis Vuitton based on the conduct of Power Promotions.

## <u>COUNT II - CONTRIBUTION</u>
### (PPE v. Power Promotions)

41.    PPE incorporates all of the above allegations as if set forth herein.

42.    In the alternative, PPE is entitled to contribution from Power Promotions for any amounts awarded against PPE in connection with Plaintiff Louis Vuitton's trademark infringement and related claims.

43.    PPE did not participate in the design and/or compliance review of the Lux Monogram bags purchased from Power Promotions.

44.     If PPE is found liable to Plaintiff Louis Vuitton for its purchase and subsequent giveaway promotions of the Lux Monogram bags, then Power Promotions' actions caused and/or contributed to that harm, thereby entitling PPE to contribution from Power Promotions.

45.     Power Promotions' actions caused and/or contributed to any alleged harm sustained by Plaintiff Louis Vuitton because Power Promotions sold and maintained the responsibility to vet and clear the design of the Lux Monogram bags for compliance with all laws and regulations.

46.     Therefore, if liability is found on the part of PPE based on the conduct described in Louis Vuitton's Complaint, which liability and/or fault is specifically denied by PPE, PPE demands contribution from Power Promotions for any sums adjudged due to Plaintiff Louis Vuitton based on the contributing acts of Power Promotions.

## <u>COUNT III - BREACH OF WARRANTIES (UCC)</u>
(PPE v. Power Promotions)

47.     PPE incorporates all of the above allegations as if set forth herein.

48.     Power Promotions and PPE entered into a contract of sale for the sale of goods within the meaning of the Maryland Uniform Commercial Code.

49.     At all times relevant to this matter, and with respect to the purchase order for the Lux Monogram bags, PPE and Power Promotions understood that Power Promotions was tasked with vetting and clearing that all of its products and designs were compliant with any and all relevant laws and regulations.

50.     Pursuant to Md. Code Ann., Com. Law ("CL") § 2-313(1)(a), Power Promotions' sale to PPE included promises or affirmations established through a longstanding course of dealing that the Lux Monogram bags were compliant with all laws and regulations.

51.     These promises or affirmations concerning the legal and regulatory compliance of the Lux Monogram bags formed a basis of the bargain between Power Promotions and PPE,

4915-9930-7714, v. 1

thereby forming an express warranty that the Lux Monogram bags conformed to those promises or affirmations pursuant to CL § 2-313(1)(a).

52.    If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, the Lux Monogram bags sold by Power Promotions to PPE were in breach of that express warranty.

53.    Pursuant to CL § 2-314 and § 2-315, Power Promotions' sale to PPE contained an implied warranty of merchantability and an implied warranty of fitness for a particular use.

54.    If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, the Lux Monogram bags sold by Power Promotions to PPE were in breach of both such warranties.

55.    Further, pursuant to CL § 2-312(3), it is an implied warranty of each contract of sale for the sale of goods that "[u]nless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like[.]"

56.    Power Promotions acted as the "seller" of the Lux Monogram bags within the meaning of the Maryland Uniform Commercial Code, CL § 2-103(1)(d), regularly dealt in goods of the kind sold as a "merchant", CL § 2-104(1), and did not otherwise disclaim the implied warranty against infringement.

57.    Pursuant to CL § 2-607(3)(b), after receiving the lawsuit from Plaintiff Louis Vuitton on June 1, 2026, PPE provided notice to Power Promotions "within a reasonable time after [they] receive[d] notice of the litigation" and remains entitled to "any remedy over for liability established by the litigation."

4915-9930-7714, v. 1

58.     Pursuant to CL § 2-607(5)(a), this litigation is one for which PPE has been sued for an obligation to which Power Promotions is or may be answerable over, and PPE has provided written notice to Power Promotions that it "may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations[.]"

59.     Power Promotions rejected PPE's tender of defense and indemnity and has refused to defend litigation for which it is answerable over as the "seller" of the Lux Monogram bags.

60.     PPE is entitled to and seeks damages in an amount to be proven at trial for Power Promotions' breach of express warranty, the implied warranty of merchantability, the implied warranty of fitness for a particular use, and the warranty against infringement, and for Power Promotions' failure to defend and indemnify PPE for obligations for which Power Promotions is answerable.

## COUNT IV - BREACH OF CONTRACT
(PPE v. Power Promotions)

61.     PPE incorporates all of the above allegations as if set forth herein.

62.     Power Promotions and PPE entered into a contract for the sale of the Lux Monogram bags.

63.     Included in this contract was an understanding that Power Promotions vetted and cleared all of its products, and that its designs were compliant with any and all relevant laws and regulations.

64.     If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, Power Promotions breached the contract by selling non-compliant bags.

9

65.     If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, then this breach was and is material to PPE, as PPE contracted to purchase legally compliant bags and would not have purchased non-compliant bags had it known of their non-compliance.

66.     Also included in the contract between PPE and Power Promotions is an implied duty of good faith and fair dealing.

67.     If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, Power Promotions breached its duty of good faith and fair dealing by offering for sale and delivering to PPE legally non-compliant Lux Monogram bags.

68.     If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, this breach of the implied duty of good faith and fair dealing was and is material to PPE.

69.     If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, then as a result of Power Promotions' breach and failure to comply with its duty of good faith and fair dealing, PPE now faces trademark infringement and related exposure, costs, and attorneys' fees through the above-captioned suit brought by Plaintiff Louis Vuitton.

70.     PPE is entitled to and seeks damages in an amount to be proven at trial for Power Promotions' breaches of its contract with PPE.

## COUNT V - UNJUST ENRICHMENT
(PPE v. Power Promotions)

71.     PPE incorporates all of the above allegations as if set forth herein.

10

4915-9930-7714, v. 1

72.    In the alternative, Power Promotions has been unjustly enriched as a result of its sale of Lux Monogram bags to PPE.

73.    PPE paid Power Promotions for the Lux Monogram bags, conferring a benefit upon Power Promotions.

74.    Power Promotions has knowledge of this benefit.

75.    If the Lux Monogram bags are determined to have been designed and sold by Power Promotions in violation of Louis Vuitton's intellectual property rights, then because the Lux Monogram bags were legally non-compliant, it would be inequitable for Power Promotions to retain PPE's payment for the Lux Monogram bags.

76.    Accordingly, PPE is entitled to and seeks damages in an amount to be proven at trial.

## COUNT VI - INDEMNIFICATION
(Cordish v. Power Promotions)

77.    Cordish incorporates all of the above allegations as if set forth herein.

78.    Cordish had no involvement in the purchase, the promotional campaign, or the giveaway of the Lux Monogram bags.

79.    Nonetheless, Plaintiff Louis Vuitton has named Cordish as a defendant and seeks to impose liability on Cordish relating to the Lux Monogram bags.

80.    To the extent that Louis Vuitton maintains its suit against Cordish, and to the extent that the Court finds that Cordish is in any way liable for damages relating to the Lux Monogram bags, Power Promotions has an implied obligation to indemnify Cordish against Louis Vuitton's trademark infringement and related claims.

11

4915-9930-7714, v. 1

81. As to the conduct described in Louis Vuitton's Complaint, any alleged harm or damages to Louis Vuitton (if any) were caused by the acts, omissions, and/or work of Power Promotions, and not Cordish.

82. Power Promotions is solely liable to Louis Vuitton for any such alleged harm or damages.

83. Cordish did not participate in the design and/or compliance review of the Lux Monogram bags PPE purchased from Power Promotions.

84. If Cordish is found to be liable to Louis Vuitton for the damages allegedly sustained by Louis Vuitton, then Cordish's liability is necessarily secondary to Power Promotions because Power Promotions maintained the responsibility to review the design of the Lux Monogram bags and ensure compliance with any third-party intellectual property rights.

85. Therefore, if liability is found on the part of Cordish based on the conduct described in Louis Vuitton's Complaint, which liability and/or fault is specifically denied by Cordish, then Cordish's liability is only passive, and its liability is premised only on the improper acts on the part of Power Promotions.

86. Therefore, Cordish demands indemnification from Power Promotions for any sums adjudged due to Plaintiff Louis Vuitton based on the conduct of Power Promotions.

**COUNT VII - CONTRIBUTION**
(Cordish v. Power Promotions)

87. Cordish incorporates all of the above allegations as if set forth herein.

88. In the alternative, Cordish is entitled to contribution from Power Promotions for any amounts awarded against Cordish in connection with Plaintiff Louis Vuitton's trademark infringement and related claims.

4915-9930-7714, v. 1

89.    Cordish did not participate in the design and/or compliance review of the Lux Monogram bags PPE purchased from Power Promotions.

90.    If Cordish is found liable to Plaintiff Louis Vuitton for PPE's purchase and PPE's subsequent giveaway promotions of the Lux Monogram bags, then Power Promotions' actions caused and/or contributed to that harm, thereby entitling Cordish to contribution from Power Promotions.

91.    Power Promotions' actions caused and/or contributed to any alleged harm sustained by Plaintiff Louis Vuitton because Power Promotions maintained the responsibility to vet and clear the design of the Lux Monogram bags for compliance with all laws and regulations.

92.    Therefore, Cordish demands contribution from Power Promotions for any sums adjudged due to Plaintiff Louis Vuitton based on the contributing acts of Power Promotions.

## PRAYER FOR RELIEF

**WHEREFORE,** PPE and Cordish demand Judgment against Power Promotions as follows:

1.    Entering judgment against Power Promotions and in favor of PPE declaring that PPE is entitled to indemnification from Power Promotions.

2.    In the alternative to Paragraph 1, entering judgment against Power Promotions and in favor of PPE declaring that PPE is entitled to contribution from Power Promotions.

3.    Entering judgment against Power Promotions and in favor of PPE in an amount to be determined at trial for its breaches of warranties and failure to defend and indemnify PPE under the Maryland Uniform Commercial Code.

4.    Entering judgment against Power Promotions and in favor of PPE in an amount to be determined at trial for Power Promotions' breaches of contract.

4915-9930-7714, v. 1

5. Entering judgment against Power Promotions and in favor of PPE in an amount to be determined at trial for unjust enrichment.

6. Awarding PPE and Cordish damages against Power Promotions in an amount to be determined at trial.

7. Entering judgment against Power Promotions and in favor of Cordish declaring that Cordish is entitled to indemnification from Power Promotions.

8. In the alternative to Paragraph 9, entering judgment against Power Promotions and in favor of Cordish declaring that Cordish is entitled to contribution from Power Promotions.

9. Awarding PPE and Cordish their reasonable attorneys' fees, costs, and other expenses incurred in this Third-Party Action.

10. Awarding PPE and Cordish such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants/Third-Party Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 28, 2026                Respectfully submitted,


 */s/ James P. Ulwick*
James P. Ulwick (Fed. Bar No. 00536)
Matthew A. Haven (Fed. Bar No. 18602)
KRAMON & GRAHAM, P.A.
750 E. Pratt Street, Suite 1100
Baltimore, Maryland 21202
Phone:  (410) 752-6030
Fax:  (410) 361-8233
julwick@kg-law.com
mhaven@kg-law.com

*Attorneys for Defendants/Third-Party Plaintiffs*
*PPE CASINO RESORTS MARYLAND, LLC, and*
*THE CORDISH COMPANIES, INC.*

14